UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVARE LA VITA WATER, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>CRAZY BOTTLING COMPANY, LLC, et al.,<br><br>     Defendants. | Case No. 19-cv-07497-DMR<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Plaintiff Salvare La Vita Water, LLC ("Vita Water") filed this case on November 14, 2019. [Docket No. 1 ("Compl.").] Defendants Crazy Bottling Company, LLC ("Crazy Bottling") and Famous Mineral Water Company, LP ("Famous Water") move to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). [Docket Nos. 16 ("Mot."), 27 ("Reply").] Vita Water timely opposed. [Docket No. 26 ("Opp.").] The parties also filed supplemental briefing as ordered by the court. [Docket Nos. 31 ("Pltf. Supp. Br."); 32 ("Def. Supp. Br.").] The court has determined that this matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the court grants Defendants' motion.

## I. BACKGROUND

Vita Water is a California limited liability company that sells bottled water products to stores and companies. Compl. ¶¶ 4, 12. Shakiri Niazi is Vita Water's founder and CEO. [Docket No. 26-1, Declaration of Shakiri Niazi in Opposition to Motion to Dismiss ("Niazi Decl.") ¶ 1.] Famous Water is a commercial water supplier, while Crazy Bottling is a water bottling company. [Docket No. 16-1, Declaration of Scott Elder in Support of Motion to Dismiss ("Elder Decl.") ¶¶ 2-3.] Both Defendants are located in Mineral Wells, Texas. *Id.* ¶ 4. Defendants are not incorporated in

California nor do they have subsidiaries or branch offices in this state. *Id.* ¶¶ 5, 8. None of Defendants' officers, directors, or employees reside or are domiciled in California. *Id.* ¶¶ 6-7. Defendants do not target their advertising specifically toward California or advertise in California publications. *Id.* ¶ 10. Defendants sell Crazy Water in stores in multiple states, but not in California. *Id.* ¶ 12. Although they sell products through their website, the website is not directed at any state in particular. *Id.* ¶ 13.

In 2018, Apple, Inc. ("Apple") was Vita Water's largest customer. Compl. ¶ 12; Niazi Decl. ¶ 4. After Vita Water and Apple had engaged in business together for several years, Apple requested that Vita Water convert its product so that it would be sold in glass bottles with aluminum caps, rather than the plastic bottles with plastic caps that Vita Water had been using. Compl. ¶ 13. As Vita Water could not find a bottler in California that could accommodate the request, Vita Water began searching for a suitable bottler and found Famous Water, which could supply the water, and Crazy Bottling, which could supply the requested containers. *Id.* ¶ 13; *see* Niazi Decl. ¶ 6. In December 2018, Niazi began communicating with Defendants' representatives Scott and Carol Elder. Niazi Decl. ¶ 7. Niazi told those individuals that Vita Water is a "small brand in CA only" and that it was looking for a long-term partner. *See id.*; *see also id.*, Ex. A. According to Niazi, Scott and Carol Elder said that they would only be interested in fulfilling the request if Vita Water could commit to purchasing quantities that would exceed $1 million in retail sales annually. *Id.* ¶ 8. Niazi represented that Vita Water could commit to making the required purchases. *Id.*

From December 2018 through February 2019, Vita Water and Defendants worked together to fulfill the initial order for Apple and discussed details regarding the selection of bottles and labels. Niazi Decl. ¶ 9; *see id*, Ex. B. The final label design included the "CA CRV" (California Cash Redemption Value) labeling that is required to sell bottled water in California. *Id.* ¶ 9; *id.*, Ex. C. Niazi avers that Defendants knew that the bottled water would be shipped to California and sold to customers in this state and even assisted Vita Water in finding a shipper. *Id.* ¶ 10; *see id.* Ex. D. Prior to Vita Water purchasing any water, Famous Water provided test results that showed the water was fit for consumption. Compl. ¶ 15.

Vita Water and Defendants discussed the terms of a written contract and exchanged several

United States District Court
Northern District of California

United States District Court
Northern District of California

drafts of proposed contracts.  Compl. ¶ 15; Niazi Decl. ¶ 11.  Defendants sent Vita Water a proposed contract that contemplated a 24-month term during which Defendants would be Vita Water's sole supplier.  Niazi Decl. ¶ 11; *id.*, Ex. E.  In December 2018, Niazi flew to Mineral Wells to discuss the potential business arrangement between the parties.  Niazi Decl. ¶ 14.  After the meeting, Carol Elder sent Niazi a text message, stating: "Your brand will find a good home with Crazy water and people will know the difference.  I look forward to working with you for years to come."  *Id.*; *see id.*, Ex. H.  On February 5, 2019, Niazi sent Defendants an email stating, "I'm looking for a long term relationship and do want a long term contract in place."  *Id.*, Ex. G.  On February 8, 2019, Scott Elder told Niazi in an email, "[F]or us to realize a benefit of this agreement we need to have assurances that you will be with us at least 2 years."  *Id.*, Ex. F.  Ultimately, the parties did not sign a written contract and proceeded on a purchase-order basis for the initial shipment.  *Id.* ¶ 11; *see also* Elder Decl. ¶ 18.

In February 2019, the initial order of 84,000 bottles was delivered to a warehouse in Hayward, California.[1]  Niazi Decl. ¶ 17.  The shipment was distributed to Apple shortly after.  *Id.* On February 19, 2019, Apple notified Vita Water that there were brown-orange particles floating in the glass water bottles it had received.  Compl. ¶ 16; Niazi Decl. ¶ 18.  Niazi contacted Defendants about the issue.  Defendants claimed the particles were "flaking from minerals" and that the water was safe to drink.  Compl. ¶ 17; Niazi Decl. ¶ 18.  Despite that representation, Apple had several bottles of the water tested, and the results showed that the particles were not minerals, but were rather biofilms that contained hyphal fragments, yeast-like cells, and live protozoa.  Compl. ¶ 18; *see* Niazi Decl. ¶¶ 18-21.  Vita Water also had the water tested, and the initial test indicated that the "plate" count in the water was over three times the acceptable levels for drinking water.  Compl. ¶ 20.  Subsequent tests revealed similar results as the tests ordered by Apple.  *Id.*  As a result of the alleged water contamination, Apple canceled its contract with Vita Water.  Compl. ¶ 19.  Vita Water recalled all the bottled water it had purchased from Defendants.  *Id.* ¶ 19.  According to Vita Water,

---

[1] Niazi states that "Defendants shipped [the] initial order" while S. Elder represents that Vita Water was "responsible for working with a shipping company and arranging the shipment of the product to California."  *See* Niazi Decl. ¶ 17; Elder Decl. ¶ 17.

1  Defendants refused to assist with the recall and rejected the lab results without conducting their own
2  testing. *Id.*

3      Vita Water brings claims for breach of contract; breach of the implied warranty of
4  merchantability; breach of the implied warranty of merchantability for food; negligence – recall;
5  negligence; and unfair business practices under California Business and Professions Code § 17200.
6      Jurisdiction is based on diversity.

7  **II.    LEGAL STANDARD FOR 12(B)(2) MOTIONS**

8      "Where . . . there is no applicable federal statute governing personal jurisdiction, the district
9  court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le*
10 *Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  Because California's long-arm
11 statute allows a court to exercise personal jurisdiction to the extent permitted by the Due Process
12 Clause of the United States Constitution, "the jurisdictional analyses under state law and federal due
13 process are the same." *Id.*; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may
14 exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United
15 States.").  In a motion to dismiss for lack of personal jurisdiction, the non-moving party "bears the
16 burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th
17 Cir. 2008).  Where, as here, a district court rules on a motion to dismiss without holding an
18 evidentiary hearing, the non-moving party "need only demonstrate facts that if true would support
19 jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).
20 "[U]ncontroverted allegations in the complaint must be taken as true . . . [and] [c]onflicts between
21 parties over statements contained in affidavits must be resolved in the plaintiff's favor."
22 *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

23 **III.   DISCUSSION**

24      Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Sup. Ct.*
25 *Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  "For an individual, the paradigm forum for
26 the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent
27 place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires*
28 *Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011).  Vita Water does not assert nor do the

United States District Court
Northern District of California

pleadings support the existence of general jurisdiction over either Defendant. Accordingly, the only issue is whether the court may exercise specific jurisdiction over Defendants.

Where a party is not subject to general jurisdiction, due process requires that a defendant have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The Ninth Circuit uses a three-part test to analyze whether a party's "minimum contacts" comport with the doctrine articulated in *International Shoe*:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff meets its burden on the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). If any of the three factors are not met, "jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

### A.    Purposeful Availment

While courts often use the term "purposeful availment" to describe the first prong of the three-part test, "purposeful availment" and "purposeful direction" are two distinct standards with unique requirements. *Schwarzenegger*, 374 F.3d at 802. In its opposition, Vita Water relied on the *Calder* effects test that is applied in tort cases. However, the *Calder* effects test is generally reserved for intentional torts.[2] *See Holland Am. Line Inc. v. Wartsila N. Am., Inc*, 485 F.3d 450, 460 (9th

---

[2] The court ordered supplemental briefing requiring Vita Water to address personal jurisdiction

United States District Court
Northern District of California

Cir. 2007) ("[I]t is well established that the *Calder* test applies only to intentional torts, not to . . . breach of contract and negligence claims."). In this case, Vita Water alleges breach of contract and negligence claims, which are properly analyzed under the purposeful availment authorities. *Id.*

The requirement of purposeful availment ensures "that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475. In deciding this prong, the court considers "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). Sufficient contacts exist where a defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quotations omitted). "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017.

*Burger King*, the precedential authority on purposeful availment, looked at four primary factors relevant to this prong: (1) prior negotiations between the parties; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealing. 471 U.S. at 479. Courts consider these factors holistically to determine whether, on balance, an out-of-state defendant purposefully availed itself of the privileges of conducting business in the forum state. *See LocusPoint Networks, LLC v. D.T.V., LLC*, Case No. 14-cv-1278-JSC, 2014 WL 3836792, at *8 (N.D. Cal. Aug. 1, 2014) (finding the purposeful availment requirement was met where three factors favored the plaintiff and one was neutral).

### 1.     Prior Negotiations

The first factor looks at where and how the parties conducted their negotiations. "[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986); *see also Burger King*, 471 U.S. at 479-80 (finding that it was "presumptively reasonable" for the defendant to be

under the "purposeful availment" analysis.

1    subject to personal jurisdiction in Florida because he "deliberately reached out" to negotiate with a

2    Florida corporation (alterations and quotation marks omitted)).  Similarly, conducting negotiations

3    or executing a contract within the forum state will support a finding of purposeful availment.  *See*

4    *LocusPoint Networks*, 2014 WL 3836792.  Conversely, "[w]hen a California business seeks out

5    purchasers in other states and deals with them by out-of-state agents or by interstate mail and

6    telephone, it is not entitled to force the customer to come to California to defend an action on the

7    contract." *Roth*, 942 F.2d at 621–22 (alterations and quotations omitted).

8        With respect to the parties' prior negotiations, Vita Water argues that "Defendants knew

9    they were dealing with a California wholesaler for a long-term contract serving California customers

10   only." Pltf. Supp. Br. at 5.  Vita Water also points to Defendants' statement that they would only

11   be interested in entering business with Vita Water if Vita Water could commit to purchasing

12   quantities of bottled water exceeding $1 million in annual retail sales, and that Vita Water made that

13   commitment.  *Id.*  Defendants respond that, although the parties discussed a long-term relationship,

14   they did not enter into a written contract to that effect and the parties agreed to proceed under a

15   purchase-order basis.  Def. Supp. Br. at 3.  In an email dated February 5, 2019, Scott Elder told

16   Niazi: "Regarding the contract, the version sent back is not worth negotiating, as the contract has

17   been severely slanted for your protection but not with protection for us. . . . [I]t is clear you are

18   wanting flexibility and are not looking for a long term relationship, so that is fine, we will proceed

19   without a contract."  Niazi Decl., Ex. G.

20       Vita Water relies primarily on two authorities to support its position.  First, in *Flynt Distrib.*

21   *Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984), a California distributing company ("Flynt") entered

22   into a distribution agreement with several publishing entities in New York.  *Id.* at 1392.  Under the

23   agreement, Flynt became the nationwide distributor for the publishing entities that were signatories

24   to the agreement.[3]  When a contract dispute arose between the parties, Flynt sued the publishing

25   entities in California and the defendants moved to dismiss based on lack of personal jurisdiction.

26

27   _____

     [3] A separate portion of the opinion addresses whether the non-signatories were also subject to
     personal jurisdiction; however, that analysis relies on the alter ego theory of liability, which is not

28   an issue in this case.

The Ninth Circuit found that personal jurisdiction existed over the signatories even though they were all nonresidents of California and their "only contact with the forum state [arose] out of the distribution agreement." *Id.* Second, in *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986), a group of California doctors set up an indemnity insurance fund in the Cayman Islands that was financed through premiums paid by the doctors. A patient later brought a malpractice claim against one of the doctors covered by the fund and was awarded a judgment. *Id.* at 1396. When the doctor declared bankruptcy, the then-deceased plaintiff's estate sued the Cayman Island fund under California law, which requires an insurer to pay for judgment obligations incurred by a bankrupt insured. *Id.* The California district ruled in favor of the estate and the defendant fund appealed on the basis that it was not subject to personal jurisdiction in California. *Id.* The Ninth Circuit rejected this argument, finding that the fund's activity was "purposefully directed" to the California insurance market, and that the effect of its actions in California "was not only foreseeable, it was contemplated and bargained for." *Id.* at 1398.

Vita Water argues that, similar to *Flynt*, Defendants' contacts at issue here arise out of Defendants' agreement to provide products to Vita Water that would be distributed to California customers. Opp. at 5; Pltf. Supp. Br. at 5. However, *Flynt* is distinguishable. First, as noted by Defendants, *Flynt* was decided before *Burger King*, which is the leading Supreme Court authority on purposeful availment. Therefore, *Flynt*'s precedential value with respect to purposeful availment is questionable. Second, in finding that the exercise of personal jurisdiction was warranted, the Ninth Circuit relied primarily on the fact that the defendants *intended* their products to be sold in California: "[I]f sale of a product arises from efforts of a manufacturer or distributor to serve the market in other states, it is reasonable to subject the manufacturer to suit in one of those states." 734 F.2d at 1393 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Here, by contrast, nothing in the pleadings or the parties' affidavits shows an effort by Defendants to serve a California market. Defendants do not have subsidiaries or offices in California; none of their officers, directors, or employees reside or are domiciled in this state; and Defendants do not contract with anyone in California to distribute products on their behalf. Elder Decl. ¶¶ 5-7. Defendants do not target California through advertisements, nor do they sell Crazy Water to stores in this state. *Id.*

8

¶¶ 10, 12.  Defendants did not solicit business from Vita Water, as Vita Water admits it initiated contact with Defendants.  *See* Compl. ¶ 13.  At most, the evidence shows that Defendants knew that Vita Water is a California company and that its products would be primarily sold to California consumers.[4]  However, "[t]he foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (finding that personal jurisdiction did not exist over a defendant seller who knew the plaintiff lived in Oregon and would use the product in that state); *Richardson v. Harbour Grp. Indus. Inc.*, 51 F.3d 282 (9th Cir. 1995) ("The mere fact that the *plaintiff* performs the contract in California cannot serve as a basis for jurisdiction over the defendant, which turns on the latter's activity." (emphasis in original)).  For these reasons, *Flynt* is not persuasive in this case.

*Haisten* is also distinguishable.  First, *Haisten* applied the *Calder* effects test that usually governs in tort cases under the "purposeful direction" analysis.  *See* 784 F.2d at 1399.  The Ninth Circuit reasoned that insurance claims were similar to products liability actions because "the state has a manifest interest in providing its residents with a forum for reaching insurance companies who refuse to honor legitimate claims."  *Id.*  It found that the "purposeful direction" test was particularly appropriate in actions against companies that indemnify personal injury liability because those actions "implicate the safety of the state's residents."  *Id.*  Accordingly, *Haisten*'s analysis relied on the tort-like nature of insurance actions.  *See Roth*, 942 F.2d at 621 (construing *Haisten* as a tort case). There are not comparable considerations in this contract case that would favor applying the "purposeful direction" test.  In fact, the Ninth Circuit has explicitly distinguished *Haisten* in cases involving contract claims.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988) ("[U]nlike in *Calder* or *Haisten*, in this case personal jurisdiction is sought on a contract claim, not on a tort claim.").  Second, *Haisten* noted that the fund was structured to "deliberately . . . avoid California insurance regulations" even while it was funded exclusively by and solely benefited Californian doctors.  *Haisten*, 784 F.2d at 1395, 1398.  In addition, the insurance agreement

---

[4] Defendants contend that they did not know the identities of any of Vita Water's customers and were unaware that Vita Water intended to sell its products to a California consumer.  Elder Decl. ¶ 20.  However, even assuming that Defendants knew that Vita Water sells only within California, there is no evidence that they made a specific effort to serve the California market.

"explicitly concerned the indemnification of *California* physicians against liability solely under *California* malpractice law." *Id.* at 1398 (emphasis in original). Since all of the fund's actions related to activity in California, the court found that the fund's activity was purposefully directed toward the California insurance market. *Id.* By contrast here, as explained above, none of Defendants' actions show an intent to serve a California market specifically.

*Gray*, cited by Defendants, provides a more analogous situation with respect to its analysis of the parties' negotiations and transaction. There, the plaintiff manufacturer ("Gray") had a principal place of business in Oregon.[5] 913 F.2d at 758. Gray contracted an equipment seller in California to find a used filter. *Id.* The seller in turn identified a used filter for sale by a company in Illinois. *Id.* Gray purchased the filter and later determined it was defective. *Id.* The California seller and Illinois company refused to refund or replace the filter, and Gray replaced the filter at its own expense. *Id.* It then sued both out-of-state companies in Oregon. *Id.* On appeal from the district court's entry of judgment against them, the defendants argued that the district court lacked personal jurisdiction over them. *Id.* at 759-60. The Ninth Circuit agreed. It noted that neither defendant had contacts with Oregon prior to the sale; they had not sought or done business in Oregon; and they did not have officers or agents in that state. *Id.* at 760. Their only contacts in relation to the sale consisted of responding to Gray's solicitation for a filter, negotiating the sale over the phone, mailing the invoice to Gray, and receiving payment from Gray. *Id.* at 760-61. The court also found that there was not a formal written contract and the sale consisted entirely of a "routine exchange of an invoice and a purchase order." *Id.* at 761. Accordingly, the court found that that the defendants' contacts with Oregon were "insufficient in themselves to establish defendants have purposefully availed themselves of the benefits and protections of the forum's laws." *Id.*

In this case, as in *Gray*, Defendants' contacts with respect to the parties' transaction consist entirely of the sale of products to a Californian entity. Defendants had not previously sought

United States District Court
Northern District of California

---

[5] Oregon, like California, has a long-arm statute that confers personal jurisdiction to the extent permitted by due process. Therefore, the reasoning in that case applies in this case notwithstanding the difference in forum state.

business in California or established offices here.  Elder Decl. ¶¶ 6-8.  They did not have subsidiaries operating in California or sell water in Californian stores.  *Id.* ¶¶ 5, 12.  None of Defendants' prior contacts show an intent to serve a California market.  As in *Gray*, Defendants did not travel to California to negotiate.  *See also Long v. Authentic Athletix LLC*, Case No. 16-cv-03129-JSC, 2016 WL 6024591, at *4 (N.D. Cal. Oct. 14, 2016), *aff'd*, Case No. 18-17061, 2020 WL 1910724 (9th Cir. Apr. 20, 2020) ("The location of the negotiations does not support purposeful availment because [the defendant] never traveled to California to conduct any negotiations.").  Instead, like Gray, Vita Water solicited business from an out-of-state supplier who responded to its inquiry.  The parties completed a one-time sale for which there was no formal written contract.  *See Gray*, 913 F.2d at 761.  The transaction involved a "routine exchange of an invoice and a purchase order."  *Id.*  As the court in *Gray* noted, the mere fact that injury in Oregon was foreseeable based on the plaintiff's residence and receipt of the product there "does not in itself establish purposeful availment."  *Id.* at 761; *see also Dynamic Software Servs. v. Cyberbest Tech., Inc*, Case No. 13-cv-04217 DMR, 2014 WL 3373924, at *9 (N.D. Cal. July 9, 2014) ("[M]ere knowledge that the plaintiff is based in the forum state is insufficient to establish purposeful availment.") (citations omitted).

In sum, *Gray* largely supports Defendants' position that they did not purposefully avail themselves of conducting business in California.  However, *Gray* is not a perfect match for this case, since that court specifically noted the parties did not contemplate a "continuing relationship."  913 F.2d at 761.  Here, by contrast, Vita Water argues that the parties' negotiations evidence an intent to form a long-term relationship.  This argument is addressed in the following section.

**2.     Contemplated Future Consequences**

With respect to the contemplated future consequences of the parties' transaction, Vita Water argues that the parties intended their business relationship to continue after the initial delivery of 84,000 bottles.  Opp. at 6.  For example, Vita Water informed Defendants that it was "looking for a long term relationship" and "want[s] a long term contract in place."  Niazi Decl., Ex. G.  In turn, Carol Elder told Niazi that she "look[s] forward to working with you for years to come."  *Id.*, Ex. H.  Defendants also told Vita Water that they would "need to have assurances that will you be with us at least 2 years" in order to recognize a benefit from the agreement.  *Id.*, Ex. F.  Vita Water asserts

that these communications evidence the parties' intent to have a long-term business relationship following the initial delivery.  Defendants respond that the parties did not formalize an agreement to a long-term relationship and explicitly agreed to proceed on an order-by-order basis.

In evaluating this factor, courts have focused on whether the contract established "continuing relationships and obligations" between the parties.  *Burger King*, 471 U.S. at 473.  In *Burger King*, for example, the Supreme Court found that the defendant purposefully availed himself of Florida law by entering into a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in Florida," including "exacting regulation of [the defendant's] business" from the plaintiff's Florida headquarters.  471 U.S. at 479-80; *see also LocusPoint Networks*, 2014 WL 3836792 at *6 (finding that the parties' "continuing obligations . . . were substantial and wide-reaching" because they "produced months of substantial coordination and joint effort").  By contrast, the Ninth Circuit found that there were no continuing obligations between the parties where the contract contemplated a single transaction for the sale of one item.  *Boschetto*, 539 F.3d at 1017.  The court noted that neither the complaint nor the plaintiff's affidavit "point to any continuing commitments assumed by Defendants under the contract."  *Id.*  Courts have also declined to find purposeful availment where the contract at issue "govern[ed] the placement of only a single employee for six months," *see Dynamic Software Servs.*, 2014 WL 3373924, at *8, or required limited on-going tech support relating to the purchase of computer equipment.  *See Nimbus Data Sys., Inc. v. Modus LLC*, Case No. 14-cv-04192 NC, 2014 WL 7387200, at *5 (N.D. Cal. Dec. 29, 2014).  These cases show that the relevant "past and future consequences of the contractual agreement" are determined by reference to the agreement actually in place, not hypothetical future transactions between the parties.  *See Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987).

Here, it is undisputed that the parties did not formally commit to a long-term relationship. Although the parties exchanged drafts of a long-term contract, the agreement was never executed. In an email dated February 5, 2019, Scott Elder stated that "it is clear that you are wanting flexibility . . . [so] we will proceed without a contract."  Niazi Decl., Ex. G.   The parties accordingly proceeded on a purchase-order basis for a single shipment of goods.  Although it is unclear whether contract

United States District Court
Northern District of California

negotiations would have continued if the initial shipment had been satisfactorily completed, the evidence shows that Defendants explicitly did not commit to ongoing obligations at the time of the shipment.  Vita Water does not argue, nor is there evidence to support, that the parties entered into an oral contract that required continuing commitments by Defendants.  Therefore, this situation is more similar to the one-time purchase order transaction completed in *Gray*.

In sum, the parties' discussions relating to possible future business transactions, none of which are formalized in a contract, do not evidence ongoing obligations by Defendants to conduct business in California.  This factor weighs in favor of Defendants.

### 3.    Terms of the Contract

Although the parties did not enter into a formal written agreement, Vita Water submitted a draft contract that the parties exchanged in February 2019.  *See* Docket No. 26-6.  The draft included a forum-selection clause that would make Palo Pinto County in Texas the exclusive forum for claims arising under the parties' agreement.  *Id.* ¶ 21.  Vita Water avers that it rejected the forum-selection clause and argues that Defendants' agreement to proceed with the initial sale anyways shows that "Defendants were aware of and accepted the possibility of litigation in California."  Opp. at 7.

Vita Water's argument is not convincing.  Even if Vita Water refused to sign an agreement with the forum-selection clause, the parties ultimately did not enter into a long-term contract. Defendants' decision to proceed on an order-by-order basis does not establish its agreement to litigate disputes for a one-time sale in California.  Further, Vita Water does not cite any case that found the *omission* of a forum-selection clause is relevant evidence for personal jurisdiction.

Since there is no contract that evidences the parties' intent to litigate in a specific forum, this factor is neutral.

### 4.    Actual Course of Dealing

With respect to the parties' actual course of dealing, Vita Water asserts that "Defendants had significant involvement in making the first shipment of 84,000 water bottles to California."  Opp. at 7.  For example, Scott Elder connected Niazi to a shipping company to arrange for the shipment of bottles.  Niazi Decl., Ex. D.  In an email dated December 21, 2018, Carol Elder informed Niazi that she "[doesn't] know California weight restrictions so you will need to decide if you want 56 or 70

United States District Court
Northern District of California

case pallets." Niazi Decl., Ex. J.   Vita Water also cites Defendants' participation in labeling the bottles with "CA CRV," as required by California law.  *See* Niazi Decl., Ex. C.  It asserts that these actions show that Defendants "clearly understood California law applied to their business relationship" and therefore it is not unreasonable to require Defendants to litigate in this forum.

Vita Water overstates Defendants' involvement in these California-specific actions. Although Scott Elder connected Niazi to a shipping company that would complete the shipment to California, Vita Water does not argue nor does the evidence show that Defendants arranged the terms of the shipment.  Instead, it appears that Defendants merely introduced Vita Water to a potential shipper.  *See* Niazi Decl., Ex. D (Scott Elder wrote the shipper: "I am copying the customer in California on here directly so they can work with you on getting a quote for the shipping.").  Carol Elder's statement that she "[doesn't] know California weight restrictions" does not suggest she took responsibility for complying with California law; rather, she told Niazi to inform her of the correct number of pallets.  With respect to Defendants' participation in creating the bottle labels, it appears that the parties largely discussed size restrictions on the labels.  *See* Niazi Decl., Ex. B.  The final label does contain the CA CRV label, but there is no evidence that Defendants designed the label or intended to market the product in California.  This is distinguishable from *Seltzer Sister Bottling Co. v. Source Perrier, S.A.*, No. 90-cv-1468-MHP, 1991 WL 279273 (N.D. Cal. May 1, 1991), which is cited by Vita Water.  In that case, the foreign defendant designed labels for its *own* product that intended to sell in California.  *See id.* at *7.  The court took this as evidence that the defendant purposefully availed itself of the privilege of doing business in California.  *Id.*  Here, by contrast, Defendants worked with Vita Water to provide labels for Vita Water's product, using the specifications required by Vita Water.  This shows only that Defendants cooperated in Vita Water's efforts to comply with California law.  *See Picot*, 780 F.3d at 1213 ("[T]he fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract.").  Therefore, the parties' actual course of conduct establishes that Defendants worked with Vita Water, a California customer, to accommodate Vita Water's forum-specific needs.  Defendants did not "invok[e] the benefits and protections" of California law because Defendants' cited actions only benefited Vita Water.  *Id.* at

1    475.  This factor weighs in favor of Defendants.

2         On balance, three of the four *Burger King* factors weighs in favor of Defendants and one is

3    neutral.   Under these circumstances, Vita Water has failed to meet its burden to show that

4    Defendants purposefully availed themselves of the privilege of conducting business in California.

5    Because Vita Water has not met the first prong of the specific jurisdiction test, it is unnecessary to

6    examine Defendants' forum-related activities or whether the exercise of personal jurisdiction is

7    reasonable.  *Picot*, 780 F.3d at 1213 n. 2.  Accordingly, Vita Water has not made a prima facie case

8    that jurisdiction over Defendants is proper.  Defendants' motion to dismiss is granted on that basis.

9         **B.      Jurisdictional Discovery**

10        Vita Water requests the opportunity to conduct discovery on the jurisdictional issue.  A court

11   may permit jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction

12   are controverted or where a more satisfactory showing of the facts is necessary."  *Data Disc, Inc. v.*

13   *Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977).  Courts in this district have held

14   that "a plaintiff need not establish a prima facie case of personal jurisdiction before it can obtain

15   jurisdictional discovery."  *Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*,

16   No. 15-cv-03566-JSC, 2015 WL 6089276, at *8 (N.D. Cal. Oct. 16, 2015) (citing cases).  A court

17   may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield

18   jurisdictionally relevant facts," *see Boschetto*, 539 F.3d at 1020, or more than "bare allegations in

19   the face of specific denials."  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)

20   (citation omitted); *see also Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-06038-CRB (DMR),

21   2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) ("[A] plaintiff must present a colorable basis for

22   jurisdiction, or some evidence constituting a lesser showing than a prima facie case." (quotations

23   omitted)). It is not an abuse of discretion to deny jurisdictional discovery "when it is clear that

24   further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."  *Wells*

25   *Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).

26        In this case, Vita Water argues that Defendants' jurisdictional evidence (namely, the Elder

27   declaration) contradicts facts known to Vita Water and that therefore Vita Water should have the

28

United States District Court
Northern District of California

opportunity to conduct discovery as to those facts.[6]  [Docket No. 23 at 7-8.]  Vita Water cites four disputed facts.  First, Vita Water contests Defendants' representation that they did not enter into an ongoing relationship and argues that the initial shipment was "the first of many contemplated by the parties."  *Id.* at 7.  The court has already explained why the parties' hypothetical future transactions are not relevant contacts for the purpose of establishing personal jurisdiction.  Second, Vita Water asserts that Defendants knew the bottled water would be shipped to California and introduced Vita Water to a potential shipper.  *Id.* at 7-8.  As stated above, Defendants' knowledge of the shipment's destination and assistance in securing a shipper do not show that it purposefully availed itself of the privilege of conducting business in California.  Third, Vita Water disputes Defendants' statement that they did not know that the end-customer was in California.  However, even if Vita Water is correct that Defendants knew the water would be sold only in California, that knowledge alone would not be sufficient to subject Defendants to personal jurisdiction in this state.  Finally, Vita Water asserts that Defendants "entered into a distribution relationship with Vita Water, to sell $1 million of Defendants' bottled water in California each year."  *Id.* at 8.  For the reasons explained above, Vita Water's evidence shows that Defendants completed a one-time transaction with a purchase order and did not commit to continuing obligations with respect to sales in California.  In sum, Vita Water's purported disagreements about the jurisdictional facts have already been addressed by the court, which relied on the evidence submitted by Vita Water.  Vita Water does not explain how further discovery into these disputes would shed light on the jurisdictional issues.  Under these facts, Vita Water has presented no more than a "hunch" that jurisdictional discovery would uncover jurisdictionally relevant facts.

Accordingly, Vita Water's request to take additional discovery is denied.

---

[6] Vita Water filed an *ex parte* motion to conduct jurisdictional discovery and to extend its deadline to oppose the motion to dismiss.  [Docket No. 23.]  The court denied the request and ordered Vita Water to file an opposition.  [Docket No. 25.]  The court informed Vita Water that it could include a request for jurisdictional discovery as part of the opposition and that the court would consider the request when ruling on the motion to dismiss.  *Id.*  Vita Water's opposition does not separately state the facts and arguments underlying the request and instead incorporates their rejected request by reference.  This is improper, as Vita Water should have briefed the issue as part of their opposition. However, for the sake of expediency, the court will consider Vita Water's prior filing.

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss under Rule 12(b)(2) is granted. The complaint is dismissed without prejudice to filing in an appropriate forum.

**IT IS SO ORDERED.**

Dated: July 20, 2020



_____

Donna M. Ryu
United States Magistrate Judge